## McMANUS–HERYER BROKERAGE CO. v. CROOKS, Collector of Internal Revenue.

District Court, W. D. Missouri, W. D. August 25, 1928.

No. 6477.

Grant I. Rosenzweig and Charles E. Mc-Coy, both of Kansas City, Mo., for plaintiff.

Roscoe C. Patterson, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and A. W. Gregg, General Counsel, Bureau of Internal Revenue, and John A. McCann, Special Attorney, Bureau of Internal Revenue, both of Washington, D. C., for defendant.

OTIS, District Judge. This is a suit for the recovery of taxes alleged to have been unlawfully assessed against and collected from the plaintiff, a Missouri corporation, for the year 1917 The plaintiff had paid federal income excess profits and war profits tax for the year 1917 on June 15, 1918, in the amount of $10,112.85, calculated and paid upon the theory that the plaintiff should be taxed under section 209 of the Revenue Act of 1917. 40 Stat. 307. The additional tax here involved was paid by the plaintiff under protest on April 23, 1925; the amount (the tax assessed and interest thereon) being $16,-523.51, which additional tax was levied upon the theory that the plaintiff was not entitled to the benefit of the provisions of section 209 as a trade or business "having no invested capital or not more than nominal capital." In the trial of the case a jury was waived and the issues submitted to the court.

There is but one principal issue involved; that is, did the plaintiff conduct a trade or business with no invested capital, or with not more than a nominal capital? The proof showed, and I find the facts to be, that—

(1) The McManus-Heryer Brokerage Company was incorporated under the laws of Missouri July 8, 1905, with a paid-up capital of $15,000.

(2) The capital of the company was increased in 1909 to $60,000, of which $30,000 was paid up in cash and tangible property and $30,000 was represented by good will.

(3) A dividend out of surplus was declared on January 1, 1917. Subtracting from the surplus then on hand the amount thus declared as a dividend, there was left as

of January 1, 1917, in the surplus of the company, the sum of $4,572.73.

(4) The company's money capital for the year 1917 was not less than $34,572.73.

(5) During the year 1917 the stockholders and number of shares owned by each were as follows:

| | | |
|---|---|---|
| E. W. McManus, | Kansas City, Mo., | 260 |
| Fred W Heryer, | Kansas City, Mo , | 260 |
| R. C. Chambers, | Kansas City, Mo., | 20 |
| H. J. Zoernig, | Oklahoma City, Okl., | 20 |
| A. M. Page, | Kansas City, Mo., | 15 |
| J. J. Flahive, | Kansas City, Mo., | 10 |
| C. F. Payne, | Kansas City, Mo., | 10 |
| J. J. O'Connor, | Kansas City, Mo., | 5 |

(6) All of the stockholders had been engaged in the wholesale grocery brokerage business for from 10 to 20 years and devoted their entire time to the business of the company.

(7) All accounts of canners and packers represented by the company were secured by its stockholders.

(8) Substantially all sales and business of the company were made and handled by the stockholders.

(9) The salaries, wages, traveling expenses, and other incidental expenses of the company for the year 1917 amounted to $112,068.62.

(10) The company's gross sales for the year 1917 were approximately $7,300,000.

(11) Commissions for the sales of goods made by the company were not collected until from 6 to 15 months after sales.

(12) The company did not guarantee any of its accounts with the principals for whom it sold goods on commission; it did not buy or hold merchandise for speculative purposes; its commissions or brokerage was based on a certain fixed charge, and never on the rise and fall of the market.

(13) For the year 1917 the company had a net taxable income in the amount of $76,328.59.

(14) The company filed its federal income and war profits return about March 1, 1918, and paid taxes on its income under section 209 of the Revenue Act of 1917, and normal taxes as provided in the amount of $10,112.85.

(15) On April 16, 1925, plaintiff paid under written protest additional war profits and normal taxes of $14,764.13, with interest in the sum of $1,759.38, a total payment of $16,523.51.

(16) The company has filed its claim for refund in due form with the collector of internal revenue for the Sixth district of Missouri, for repayment to it of the sum of $16,523.51, with interest from April 23, 1925, at 6 per cent.

(17) The claim for refund was rejected by the Commissioner of Internal Revenue on February 17, 1926, and this suit was brought on April 13, 1926.

The proof also showed certain other facts, which will be stated hereinafter as having been found by the court to be facts. Section 209 of the Revenue Act of 1917 provides:

"That in the case of a trade or business having no invested capital or not more than a nominal capital there shall be levied, assessed, collected and paid, in addition to the taxes under existing law and under this Act, in lieu of the tax imposed by section 201, a tax equivalent to eight per centum of the net income of such trade or business in excess of the following deductions: In the case of a domestic corporation $3,000.00. * * *"

I have found as a fact that the plaintiff had an invested capital of not less than $34,572.73. The plaintiff contends that that was its total invested capital for the year 1917. The government contends that its total invested capital was as much as approximately $200,000. Here is a controversy of fact. To reach the alleged total of $200,000, the government adds to the $30,000 of paid-in capital the sum of $88,000 of borrowed money which was used in the business during the year 1917 and the sum of $72,000, being the dividend declared of surplus on January 19, 1917, but which the government contends was not paid to the stockholders, but "was left in the business and used in it as additional capital during the year."

That the $88,000 of borrowed money should not be included is clear from the express provision of section 207 defining the term "invested capital," which is that that term shall not include "money or other property borrowed." That the dividend of $72,000 should not be included seems to me to be clear for two reasons: First, I find no warrant in the testimony for the claim that it was left in the business and used therein; and, second, if it was so left in the business and used therein, it was a liability to the stockholders, and not in any different class than any other borrowed money, and not, therefore, under the statute, properly included within the term "invested capital." It follows that this controversy as to what was the amount of invested capital used in the business must be resolved in favor of the plaintiff, and that it must be found as a fact, and it is so found, that the invested capital used

in the business of the company during the year 1917 was not more than $34,572.73.

The company then did use in its business during the year 1917 capital of the amount stated. It cannot, therefore, be entitled to the benefit of section 209 as a trade or business having *no* invested capital. If it is to have the benefit of that section, it must be on the theory that it did not have and use in its business more than a *nominal* capital.

What is meant by nominal capital? The definition contended for by the government, as it is set out in its brief, may be gathered from the following quotation from that brief:

"The term 'nominal' defines not merely the amount of capital, but also and primarily the relation between 'capital' and the business. Capital may well be nominal, in the sense that it is comparatively small in amount, and yet not be nominal in its relation to the business, for, though small in amount, it may be essential to the conduct of the business and the production of income. The business may be of such a nature that it cannot be conducted without the employment of capital, in which event it seems clear that capital is not nominal."

Judge Dickinson, of the Eastern district of Pennsylvania, in Park Amusement Co. v. McCaugh, 14 F. (2d) 553, 556, said:

"The real criterion [that is, as to whether capital is merely nominal] is in the fact finding of whether money as an income producer played any real and substantial part in producing the income to be taxed. * * *"

Judge Hickenlooper, of the Southern district of Ohio, in Hubbard-Ragsdale & Co. v. Dean, Collector, 15 F.(2d) 410, 411, in speaking of the definition of *nominal capital* given by the cases, said:

"Under that law [referring to section 209] the invested capital was considered as merely nominal, if it was used solely as a fund from which to advance salaries, wages, etc., and to provide office furniture, accommodations, and equipment. Under such circumstances it played no integral part in the actual production of income. It was incidental to the earning power of the corporation, which functioned independently of it. De Laski, etc., Co. v. Iredell, Collector [D. C.] 268 F. 377, affirmed 290 F. 955 (C. C. A. 3). But where the use of capital served a direct and necessary function in carrying on the business as it was in fact carried on, it was not to be classified as merely nominal. R. H. Martin, Inc., v. Edwards [D. C.] 293 F. 258."

Article 72 of Treasury Regulation No. 41, in effect provides that capital shall be held to be nominal—

"If the employment of such capital is necessitated by delay and irregularity in the receipts of fees, etc., or if such capital is wholly or mainly used as a fund from which to advance salaries, wages, etc., or to provide office furniture, accommodations and equipment. * * *"

From these various declarations as to the meaning of *nominal capital*, and from others to the same effect which might be cited, the conclusion is justified that, where capital is not employed primarily as a means of producing the income which is to be taxed, but is employed for the purpose of advancing salaries, wages, etc., and to maintain an office and business organization pending receipts of revenue from the business, it is *nominal* within the meaning of the statute.

For what purpose was the invested capital of this company used? The business here was primarily a brokerage business, conducted almost entirely by the stockholders and having its principal source of income in the form of commissions and sales made by the company, which commissions were not received for a considerable period of time after they were earned. But, while the business was principally a brokerage business, the company also conducted a large "trading on its own account" business. This latter phase of its activities, however, was incidental to its brokerage business and arose out of the principal business in this way:

Customers of the plaintiff would order through the plaintiff goods from the plaintiff's principals which would not make a full carload of goods. In order that there might be a full carload, and that the freight expenses might thereby be lessened, the plaintiff would order from its principals in its own name and for itself goods sufficient to fill out the car. This excess of goods so ordered by the plaintiff it would sell on its own account. Almost always it would sell such goods while they were yet in transit. According to the testimony, and as to that there was no contrary proof, it did not use any money in connection with the purchase of such goods.

The gross sales which the company made on commission during the year 1917 was approximately $6,000,000. The gross sales made by it in trading on its own account during the same year was approximately $1,300,000. While the testimony does not permit an exact statement, it appears that

a quite substantial portion of its net income was derived from that part of its business designated "trading on its own account." Expense of conducting the business during the year 1917 was, as has been indicated above, $118,068.63, so that the total amount of the capital was only sufficient to take care of the expenses—that is, salaries, wages, and other incidental matters—for approximately three months.

In view of all of the testimony, and especially that last referred to, it appears to me that the fact was that the capital employed was almost wholly used, not to produce income, but as a fund from which to advance salaries and wages, and to maintain the organization during the interval elapsing between the performance of the services rendered by the company for its principals and the receipt from its principals of commissions earned by the company. I find that that was the fact.

Under this finding of fact, under the definition of nominal capital, the conclusion must be that the plaintiff had only a nominal capital invested in its business and was entitled to be taxed under section 209. Judgment should be for the plaintiff for the amount prayed in its petition, with interest, and a formal entry may be prepared and submitted to the court for approval.

The findings of fact requested by the defendant, in so far as they are inconsistent with the findings of fact hereinbefore set out, are denied, and the conclusions of law requested by the defendant are likewise denied, to all of which the defendant is allowed an exception.