**McMANUS–HERYER BROKERAGE CO. v. CROOKS, Collector of Internal Revenue.**

No. 7204.

District Court, W. D. Missouri, W. D.

May 22, 1930.

Grant I. Rosenzweig and Charles E. McCoy, both of Kansas City, Mo., for plaintiff.

William L. Vandeventer, U. S. Atty., and Harry L. Thomas, Asst. U. S. Atty., both of Kansas City, Mo., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, F. F. Toomey and John H. Pigg, Sp. Attys., Bureau of Internal Revenue, both of Washington, D. C., for defendant.

OTIS, District Judge.

This is a suit for the recovery of taxes alleged to have been unlawfully assessed against and collected from the plaintiff, a Missouri corporation, for the years 1918, 1919, 1920, and 1921. Taxes for these years were paid by the plaintiff upon the theory that it was a personal service corporation within the meaning of section 200 of the Revenue Act of 1918 (40 Stat. 1057). Additional taxes, for recovery of which this suit is brought, were exacted on the theory that the plaintiff was not entitled to classification as a personal service corporation. The ultimate question involved is as to whether in each of the years mentioned the plaintiff was or was not a personal service corporation.

Upon the testimony introduced at the trial, including an agreed stipulation as to certain facts, I make the following finding of facts:

Finding of Facts.

I. That the McManus-Heryer Brokerage Company was incorporated under the laws of Missouri, July 8, 1905, with a paid up capital of $15,000, and is a domestic corporation, with its principal place of business at Kansas City, Mo., during the years 1918 to 1921, inclusive.

II. At all times material herein the defendant, Noah Crooks, was the duly appointed, qualified, and acting United States Collector of Internal Revenue for the Sixth District of Missouri, in which said district is located the principal office and place of business of the plaintiff.

III. That the capital of the plaintiff was increased in 1909 to $60,000, of which $30,000 was paid up in cash and tangible property, and $30,000 was represented by good will, and the capital of the plaintiff was $60,000, as stated aforesaid during the years 1918 to 1921, inclusive.

IV. During the years 1918 to 1921, inclusive, the stockholders and number of shares owned by each were as follows:

E. W. McManus..Kansas City, Mo...260 shares
Fred W. Heryer..Kansas City, Mo...260 shares
R. C. Chambers..Kansas City, Mo... 20 shares
H. J. Zoernig....Oklahoma City, Okl. 20 shares
A. M. Page......Kansas City, Mo... 15 shares
J. J. Flahive....Kansas City, Mo... 10 shares
C. C. Payne.....Kansas City, Mo... 10 shares
J. J. O'Connor...Kansas City, Mo... 5 shares

V. That all of the stockholders of plaintiff had been engaged in the wholesale grocery brokerage business for from ten to twenty years, and devoted their entire time to the business of the plaintiff for the years 1918 to 1921, inclusive.

VI. That all accounts of canners and packers represented by the plaintiff during the years 1918 to 1921, inclusive, had been secured by E. W. McManus and Fred W. Heryer.

VII. That all business activities of the plaintiff were directed by and under the constant supervision of E. W. McManus and Fred W. Heryer, and substantially all sales of the plaintiff were made by its stockholders. Its only employees outside of stockholders were four or five stenographers and two young men just entering the business, and engaged largely in clerical work, but in a small way, under the direction and supervision of McManus and Heryer, making sales. The sales made by them were inconsequential.

VIII. That the salaries, wages, traveling expenses, and other incidental expenses of the plaintiff for the years 1918 to 1921, inclusive, were as follows:

| | |
|---|---|
| 1918 | $110,357.64 |
| 1919 | 150,086.11 |
| 1920 | 142,549.61 |
| 1921 | 145,743.44 |

IX. That the plaintiff's gross sales for the years in question were as follows:

| | |
|---|---|
| 1918 | $11,665,963.79 |
| 1919 | 15,092,803.39 |
| 1920 | 13,147,173.24 |
| 1921 | 10,791,981.80 |

That included in above sales of all kinds the sales on a straight brokerage business by the plaintiff for the years in question were as follows:

| | |
|---|---|
| 1918 | $10,500,000.00 |
| 1919 | 13,000,000.00 |
| 1920 | 11,700,000.00 |
| 1921 | 9,750,000.00 |

X. That the plaintiff made gross sales trading as a principal for the years in question as follows:

| | |
|---|---|
| 1918 | $1,165,963.79 |
| 1919 | 2,092,803.39 |
| 1920 | 1,447,173.24 |
| 1921 | 1,041,981.80 |

XI. That the plaintiff had gross income from all sources for the years in question as follows:

| | |
|---|---|
| 1918 | $180,334.05 |
| 1919 | 284,554.85 |
| 1920 | 203,505.75 |
| 1921 | 172,355.39 |

XII. That its gross income from brokerage business for the years in question was as follows:

| | |
|---|---|
| 1918 | $157,938.33 |
| 1919 | 202,152.01 |
| 1920 | 175,745.88 |
| 1921 | 146,554.13 |

XIII. That the plaintiff had gross income from trading as a principal for the years in question as follows:

| | |
|---|---|
| 1918 | $22,395.72 |
| 1919 | 82,402.84 |
| 1920 | 27,759.87 |
| 1921 | 25,801.26 |

That the percentage of plaintiff's gross income from trading as a principal to its total gross income was approximately as follows:

| | |
|---|---|
| 1918 | 12½% |
| 1919 | 29% |
| 1920 | 13½% |
| 1921 | 15% |

XIV. That the net income from all sources of the plaintiff for the years in question was substantially as follows:

1918 .........................$ 70,341.53
1919 ......................... 137,497.43
1920 .......................:. 63,102.57
1921 ......................... 26,611,95

XV. That the net income of plaintiff from brokerage or commissions for the years in question was as follows:

1918 .........................$ 70,505.92
1919 ......................... 105,230.64
1920 ......................... 63,371.20
1921 ......................... 27,832.15

XVI. That the net income *directly* gained from trading as a principal for the years in question was as follows:

1918 ...........Loss...........$ 164.30
1919 .............. ............ 32,266.79
1920 ...........Loss............ 258.63
1921 ...........Loss............ 1,220.20

But what part of the whole net income was produced by plaintiff's trading as a principal cannot be determined.

XVII. That the net income of all kinds from brokerage and from trading as a principal as described above is exclusive of all federal income, war profits, and excess profits taxes.

XVIII. That the assessments made by the Commissioner of Internal Revenue of federal income, war profits, and excess taxes, and paid under written protest by plaintiff for the years in question, exclusive of interest, were as follows:

1918 .........................$37,041.10
1919 ......................... 44,776.82
1920 ......................... 19,236.49
1921 ......................... 8,101.50

XIX. That the commissions for the sales of goods made by the plaintiff were not collected until from six to fifteen months after sales.

XX. That the plaintiff did not guarantee any of its accounts with the principals for whom it sold goods on commission; it did not buy or hold merchandise for speculation purposes; its commission or brokerage was based on a certain fixed charge, and never on the rise or fall of the market.

XXI. That the actual capital (exclusive of good will and borrowed capital) and surplus of the plaintiff for the years in question was as follows:

January 1, 1918..............$ 63,784.00
December 31, 1918.............. 104,073.34
December 31, 1919.............. 96,587.29
December 31, 1920.............. 99,069.36
December 31, 1921.............. 96,546.86

XXII. On various dates during the years 1918 to 1921, inclusive, the plaintiff borrowed various sums of money from the Commerce Trust Company, Kansas City, Mo., aggregating $232,500 for the year 1918, $353,000 for the year 1919, $239,000 for the year 1920, and $144,000 for the year 1921. On various dates during said years the plaintiff repaid to the said Commerce Trust Company various sums, aggregating $187,000 for the year 1918, $358,000 for the year 1919, $279,000 for the year 1920, and $61,000 for the year 1921. The average annual money borrowed by plaintiff from the bank and from its stockholders was $117,554 for the year 1918, $150,101 for the year 1919, $135,845 for the year 1920 and $84,077 for the year 1921.

XXIII. On account of money borrowed by the plaintiff, the plaintiff paid interest as follows: $7,053.24 for the year 1918; $9,006.07 for the year 1919; $8,150.69 for the year 1920; and $5,044.66 for the year 1921. This interest was paid on account of money borrowed by plaintiff from the Commerce Trust Company and on account of dividends declared by the plaintiff, but not withdrawn by its stockholders.

XXIV. During the years 1918 to 1921, inclusive, the plaintiff duly declared out of its surplus and/or undivided profits, dividends as follows:

Dates.          Amounts of Dividends Declared.
December 31, 1918..............$ 30,000.00
March 10, 1919.............. 24,000.00
December 31, 1919.............. 120,000.00
December 31, 1920.............. 60,000.00
December 21, 1921.............. 30,000.00

The dividends so declared by the plaintiff were at the time of the declaration thereof credited on the books of the plaintiff to the accounts of the plaintiff's stockholders in proportion to the amount of the plaintiff's capital stock owned by them.

XXV. The business of plaintiff herein designated trading as a principal arose out of the principal business of plaintiff in this way. The plaintiff would obtain from customers orders for goods which would not make a full carload. Generally, these orders amounted to from 50 per cent. to 66⅔ per cent. of a full carload. In order that customers who had made orders for part goods might get same within the time required by

them, and in order that there might be a full carload so as to obtain freight rates of carload lots, the plaintiff would order from its principals in its own name for itself goods sufficient to fill out the car. As soon as the car was ordered, the plaintiff would immediately busy itself selling such goods while they were yet in transit. From one-half to two-thirds of the goods so ordered by the plaintiff in its own name were sold before their arrival at destination. Such goods which were not sold before arrival were stored in public warehouses at point of destination and later sold. Plaintiff had no warehouse of its own. It was the customary method of plaintiff's principals to ship goods either upon sight draft, bill of lading attached, or upon ten days' time from date of shipment. The goods ordered by plaintiff to make up a full car it would sell on its own account. Its terms of sale were ten days with a discount of $1\frac{1}{4}$ to $1\frac{1}{2}$ per cent. varying on different classes of goods. Plaintiff did not purchase any goods or merchandise from its principals, whom it represented as brokers.

XXVI. The plaintiff's operations as a principal trading on its own account were not conducted as a separate business, but this phase of the plaintiff's business was closely interwoven and handled with a view to assisting the plaintiff in its brokerage business.

XXVII. The business or operating expenses of the plaintiff during the years 1918 to 1921, inclusive, as set forth in paragraph XXVIII below, were recorded on the plaintiff's books of account and records as chargeable against the plaintiff's gross income from both its brokerage or commission business and from its business as a principal trading on its own account, said business or operating expense not being segregated and/or charged on the plaintiff's books of account and records as against the gross income derived by the plaintiff from each of said classes of transactions, to wit: "Brokerage or commission business," and as a "principal trading on its own account."

XXVIII. The plaintiff's total annual and average monthly operating or business expenses during the years 1918 to 1921, inclusive, were as follows:

| Year | Total Expense | Average Monthly Expenses |
|---|---|---|
| 1918 | $110,357.64 | $ 9,196.47 |
| 1919 | 150,086.11 | 12,507.17 |
| 1920 | 142,549.61 | 11,879.13 |
| 1921 | 145,743.44 | 12,311.95 |

XXIX. The plaintiff's total annual and average monthly cash receipts from commissions on sales made by it for its principals and from merchandise sold on its own account were as follows:

| Year | Total Annual Cash Receipts | Average Cash Receipts |
|---|---|---|
| 1918 | $1,425,055.48 | $118,754.62 |
| 1919 | 2,391,696.45 | 199,308.04 |
| 1920 | 1,814,920.69 | 151,243.39 |
| 1921 | 1,411,607.65 | 117,633.97 |

XXX. The plaintiff's total annual and average monthly cash disbursements for the years 1918 to 1921, inclusive, were as follows:

| Year | Total Annual Cash Disbursements | Average Monthly Cash Disbursements |
|---|---|---|
| 1918 | $1,663,726.10 | $138,643.84 |
| 1919 | 2,739,638.26 | 228,303.19 |
| 1920 | 2,057,862.85 | 171,488.57 |
| 1921 | 1,554,084.61 | 129,507.05 |

XXXI. The plaintiff's cash balances (cash on hand and in bank) and/or overdrafts as at the end of each month involved during the year 1918 to 1921, inclusive, were as follows:

| | 1918 | 1919 | 1920 | 1921 |
|---|---|---|---|---|
| January | $ 9,910.44 | 9,059.23 | 8,134.96# | 13,940.00 |
| February | 5,632.15 | 242.11# | 7,972.01 | 19,070.70 |
| March | 13,736.30# | 5,250.45# | 5,047.77 | 22,605.65 |
| April | 13,302.98 | 1,771.24 | 38,411.02 | 23,782.93 |
| May | 1,339.23 | 11,100.36# | 4,910.71 | 10,215.95 |
| June | 4,441.70# | 11,425.19 | 10,746.93 | 8,917.62 |
| July | 7,444.24 | 27,783.86 | 24,701.30 | 17,722.69 |
| August | 2,249.56# | 4,331.94# | 13,684.15 | 21,339.12 |
| September | 12,254.08 | 2,737.42 | 8,521.48 | 2,878.11 |
| October | 2,951.88# | 10,632.00 | 48,533.83 | 5,459.37 |
| November | 7,868.33# | 6,747.57 | 48,103.64 | 7,426.17 |
| December | 1,056.23 | 6,214.42 | 2,932.26 | 4,805.30 |

# Indicates bank drafts.

XXXII. The plaintiff's assets and liabilities as at January 1, 1918, were as follows:

|  | Assets | Liabilities |
|---|---|---|
| 4% U. S. Treasury Certificates | $ 20,000.00 | |
| Cash on hand and in bank | 7,126.85 | |
| Accounts receivable | 30,468.38 | |
| Bills Receivable | 4,700.00 | |
| Due from employees on account (Liberty bonds) | 1,658.16 | |
| Merchandise—inventory | 95,318.80 | |
| Commissions outstanding | 14,228.91 | |
| Furniture and fixtures | 250.00 | |
| Investments, stocks | 500.00 | |
| Travelers' equipment auto | 250.00 | |
| Additional assets (Good Will) | 30,000.00 | |
| Capital stock | | $ 60,000.00 |
| Surplus and undivided profits | | 33,784.99 |
| Reserve for losses | | 1,437.95 |
| Reserve for taxes | | 9,948.68 |
| Unpaid bonus | | 15,019.98 |
| Due stockholders | | 75,778.54 |
| Accounts payable | | 8,530.96 |
| Total | $204,501.10 | $204,501.10 |

XXXIII. The plaintiff's assets and liabilities as at December 31, 1918, were as follows:

|  | Assets | Liabilities |
|---|---|---|
| U. S. Treas. Certificates | $ 5,000.00 | |
| Cash | 1,056.23 | |
| Accounts receivable | 44,455.20 | |
| Bills receivable | 1,886.37 | |
| Employees a/c L/B | 418.81 | |
| Merchandise | 165,203.37 | |
| Commissions | 35,500.04 | |
| Furniture and fixtures | 2,070.11 | |
| Investment (stock) | 6,000.00 | |
| Boats | 3,500.00 | |
| Autos | 1,025.00 | |
| Other accounts (Good Will) | 30,000.00 | |
| Capital stock | | $ 60,000.00 |
| Surplus | | 75,073.34 |
| Reserve for losses | | 1,437.95 |
| Unpaid bonus | | 10,811.65 |
| Accounts payable | | 7,847.47 |
| Bills payable | | 45,500.00 |
| Due stockholders | | 92,767.00 |
| Reserve depreciation | | 2,477.72 |
| Total | $295,915.13 | $295,915.13 |

The amount of $92,767 so shown by the plaintiff's balance sheet as at December 31, 1918, as "Due stockholders," represents unwithdrawn dividends regularly declared by the plaintiff out of its surplus and undivided profits, and credited to the accounts of its stockholders on or before December 31, 1918.

XXXIV. The plaintiff's assets and liabilities as at December 31, 1919, were as follows:

### Balance Sheet

| | Assets | Liabilities |
|---|---|---|
| Cash ............................................$ | 6,214.42 | |
| Accounts receivable ............................ | 61,486.69 | |
| Merchandise .................................... | 197,798.23 | |
| Commissions .................................... | 38,317.44 | |
| Furniture and fixtures.......................... | 2,499.11 | |
| Investment (stock) ............................. | 16,000.00 | |
| Boats .......................................... | 3,500.00 | |
| Autos .......................................... | 2,020.00 | |
| Other accounts (Good Will)...................... | 30,000.00 | |
| Capital stock .................................. | | $ 60,000.00 |
| Surplus ........................................ | | 66,587.29 |
| Reserve for losses.............................. | | 1,437.95 |
| Unpaid bonus ................................... | | 33,647.76 |
| Accounts payable ............................... | | 9,673.21 |
| Bills payable .................................. | | 40,000.00 |
| Due stockholders ............................... | | 142,090.38 |
| Reserve for depreciation........................ | | 4,399.30 |
| Total .........................................$ | $357,835.89 | $357,835.89 |

The amount of $142,090.38 as shown by the plaintiff's balance sheet as at December 31, 1919, as "Due stockholders," represents unwithdrawn dividends regularly declared by the plaintiff out of its surplus and undivided profits and credited to the accounts of its stockholders on or before December 31, 1919.

XXXV. The plaintiff's assets and liabilities as at December 31, 1920, were as follows:

### Balance Sheet

| | Assets | Liabilities |
|---|---|---|
| Cash ............................................$ | 2,932.26 | |
| U. S. Bonds......:.............................. | 15,000.00 | |
| Accounts receivable ............................ | 79,016.02 | |
| Commissions outstanding ........................ | 46,046.80 | |
| Furniture and fixtures.......................... | 3,378.86 | |
| Merchandise .................................... | 57,828.76 | |
| Investments .................................... | 16,000.00 | |
| Auto ........................................... | 2,020.00 | |
| Other assets (good will)........................ | 30,000.00 | |
| Capital stock .................................. | | $ 60,000.00 |
| Surplus ........................................ | | 69,069.36 |
| Reserve for bad debts........................... | | 1,437.95 |
| Accounts payable ............................... | | 10,805.67 |
| Money due stockholders.......................... | | 88,731.15 |
| Unpaid bonus ................................... | | 19,269.71 |
| Reserve for depreciation........................ | | 2,908.86 |
| Total .........................................$ | $252,222.70 | $252,222.70 |

The amount of $88,731.15 so shown by the plaintiff's balance sheet as at December 31, 1920, "Due stockholders," represents unwithdrawn dividends regularly declared by the plaintiff out of its surplus and undivided profits and credited to the accounts of its stockholders on or before December 31, 1920.

XXXVI. The plaintiff's assets and liabilities as at December 31, 1921, were as follows:

### Balance Sheet

| | Assets | Liabilities |
|---|---|---|
| Cash | $ 4,805.30 | |
| Bills receivable | 4,352.97 | |
| Accounts receivable | 49,715.26 | |
| Commissions received | 30,105.89 | |
| Merchandise inventory | 178,210.60 | |
| Investments | 18,480.00 | |
| Furniture and fixtures | 3,624.86 | |
| Autos | 995.00 | |
| Accounts receivable employees | 622.00 | |
| Other assets (Good Will) | 30,000.00 | |
| Capital stock | | $ 60,000.00 |
| Surplus | | 66,546.86 |
| Reserve bad debts | | 1,437.95 |
| Accounts payable | | 3,499.15 |
| Bills payable | | 83,000.00 |
| Due stockholders | | 90,766.86 |
| Unpaid bonus | | 13,136.31 |
| Reserve for depreciation | | 2,524.75 |
| Total | $320,911.88 | $320,911.88 |

The amount of $90,766.86 so shown by the plaintiff's balance sheet as at December 31, 1921, as "Due stockholders," represents unwithdrawn dividends regularly declared by the plaintiff out of its surplus and undivided profits, and credited to the accounts of its stockholders on or before December 31, 1921.

XXXVII. The business of plaintiff was primarily a brokerage business, conducted almost entirely by the stockholders, and having its principal source of income in the form of commissions and sales made by the stockholders of the plaintiff, and the business of trading on its own account as a principal was only incidental to its brokerage business.

XXXVIII. That plaintiff filed its federal income, war profits, and excess profits tax return for the years 1918 to 1921, inclusive, within the time required by law, claiming that it was entitled to personal service classification under section 200 of the Revenue Acts of 1918 and 1921, and showed that its taxable income for each of said years was taxable to its stockholders in proportion to their respective stockholdings; that said stockholders in their individual returns included their share of the earnings of plaintiff, based on their respective stockholdings, and paid the federal taxes thereon as required by law.

XXXIX. That subsequent to the filing of said federal income tax returns, claiming that it was entitled to personal service classification, the same was reviewed and audited by the Commissioner of Internal Revenue, and personal service classification was denied plaintiff on the ground that capital, whether borrowed or invested, was a material income-producing factor, and a tax liability, together with interest for said years, was determined by the said Commissioner to be as follows:

| | | | | |
|---|---|---|---|---|
| 1918 | Tax | $37,041.10 | Interest | $1,882.50 |
| 1919 | Tax | 44,776.82 | Interest | 2,275.54 |
| 1920 | Tax | 19,236.49 | Interest | 977.63 |
| 1921 | Tax | 8,101.50 | Interest | 2,061.82 |

XL. That on January 21, 1927, plaintiff paid, under written protest, additional taxes and interest for the years 1918, 1919, and 1920, and on June 22, 1926, paid the additional taxes enforced, together with the interest for the year 1921, the total of said taxes and interest so paid by plaintiff under written protest for the years 1918 to 1921, inclusive, being the sum of $116,353.50.

XLI. That thereafter, and within the time required by law, and more than six months prior to the bringing of this suit by plaintiff, it duly filed claim for refund for the amounts of the taxes and interest assessed against and paid by it for the years 1918 to 1921, inclusive, as aforesaid, on the ground that plaintiff was entitled to classification as a personal service corporation for each of said years, and stating in said claims for refund the same grounds for personal service classification as it alleged in its petition in this action, that the Commissioner of Internal Revenue has rendered no decision on said claims for refund, and that plaintiff's suit was commenced within the time required by law.

XLII. That the gains, profits, and income derived from trading as a principal for each of the years in question was less than 50 per centum of its gross income; that it had no gains, profits, commissions, or other income derived from government contracts made between April 6, 1917, and November 11, 1918, both dates inclusive; that plaintiff has made no assignment or transfer of its claims for refund or in this suit or any part thereof or interest therein.

XLIII. That the income of the plaintiff for the years 1918 to 1921, inclusive, is to be ascribed primarily to the principal stockholders of the plaintiff, who were regularly engaged in the active conduct of the business.

## Opinion.

Section 200 of the Revenue Act of 1918 provides as follows:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include * * * any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal. * * *"

Undoubtedly in this case the income of the plaintiff in each of the years here involved "is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation." So that, if the statute went no further, the plaintiff clearly was entitled to be classified as a personal service corporation. But the statute does go further by denying to a corporation such a classification, unless it is one "in which capital (whether invested or borrowed) is not a material income producing factor." The one question here then is whether in the years 1918, 1919, 1920, and 1921 the capital of the plaintiff was a material income-producing factor.

Does the word "income" as used in the phrase "income-producing factor" mean gross or net income. I am constrained to hold that it means gross income. That construction is certainly suggested by the very language of the section. The section in effect provides that, if the gross income of a corporation derived from "trading as a principal," and hence from the employment of capital, is more than 50 per cent. of the whole gross income of the corporation, capital is then as a matter of law "a material income producing factor." The inference then is clear that the test whether capital is a material income-producing factor is whether it materially affects the *gross income* of the corporation. And the Court of Appeals for the Eighth Circuit has held that it is *gross income that is referred to in the statute.* Denver Live Stock Commission Co. v. Commissioner of Internal Revenue (8 C. C. A.) 29 F.(2d) 543, 544.

In the case cited it was contended by the taxpayer that, while it had a gross income from the use of capital, it had no net income from that branch of its whole business. As to that contention the court said:

"It is true that deductions on account of rediscounts, etc., reduced its net income from capital sources, if applied exclusively to such sources, to a loss; but this does not alter the principle that the capital invested was income producing and formed one factor of its business. In such case, the loss or gain must be computed upon the entire business and not upon any one factor. * * * We cannot indulge the contention of counsel that the term 'income,' as employed in the statute, is restricted to net income; that whether, in any given year, a corporation is to be classified as a personal service corporation, depends upon whether its capital in that particular year resulted in the production of net income, and that such a corporation may be classified as general in one year and as a personal service corporation in another year, dependent upon the financial result of its operations."

In each of the years involved here a material part of the gross income of the plaintiff was derived from that branch of its business in which it was trading as a principal and using capital. It is stipulated, and I hold, that the facts are that in the year 1918 12½ per cent. of its total gross income, in the year 1919 29 per cent. of its total gross income, in the year 1920 13½ per cent. of its total gross income, and in the year 1921 15 per cent. of its total gross income, was from this branch of its business.

Notwithstanding the fact that a material part of the gross income of the plaintiff was derived from the use of capital, is it nevertheless entitled to be classified as a personal service corporation merely because that branch of its business in which capital was employed was conducted by it only as an incident to its primary business of brokerage?

Here again I am constrained by the decision of the Court of Appeals for the Eighth Circuit in Denver Live Stock Commission Co. v. Commissioner of Internal Revenue, supra. The fact was in that case that that branch of the business in which the taxpayer employed capital was only incidental to that brokerage business which was its primary concern. The Denver Livestock Commission Company derived a material part of its gross income from money which it loaned to the principals it represented in order that they might and would employ the Denver Livestock Commission Company. In this connection the court said:

"It had in the past financed its customers and used its capital for that purpose; this, in turn, contributed to the volume of its business and to resulting profits. During the fiscal year involved it was still necessarily engaged in the same activities to an appreciable extent. It may, as stated, have contemplated a withdrawal from the business of financing its customers, and from loan operations generally, and may have made progress in that direction. When it has done so to a controlling extent, it may then, as conceded by the government, be classified as a public service corporation; but for the year under consideration there is substantial evidence to support the finding of the Commissioner and of the Board that its capital still remained a material income-producing factor. * * *"

■ I am bound by this decision, although in McManus-Heryer Brokerage Co. v. Crooks (D. C.) 28 F.(2d) 906, I held that for the year 1917 the capital employed by this same plaintiff in trading as a principal was used only incidentally to its brokerage business, and that therefore its status as a personal service corporation was not changed thereby. The defendant did not appeal from that decision. I must hold now that, although its trading as a principal was merely incidental to its brokerage business if it used capital therein which materially contributed to the production of its gross income, it is not entitled to classification as a personal service corporation.

■ The burden of proof is on the plaintiff to show that capital was not a material income-producing factor. The plaintiff has not sustained that burden, even if net income is meant. The two branches of the plaintiff's business were so intermingled and carried on together that it is impossible to divide the whole net income of the plaintiff into two parts, and to say that one part was exclusively derived from the brokerage branch of the business unaffected by the trading as a principal branch of the business. Indeed, it is almost a necessary conclusion that plaintiff's trading as a principal directly contributed to and entered into its net income from its strictly brokerage business. Why did it trade as a principal at all? Was it not because that facilitated its brokerage business and so increased its profits and net income from that branch of its whole business? The admitted object of this incidental activity was the securing of better freight rates for, and speedier deliveries to, purchasers from plaintiff's principals. Without these services, the principal business of the plaintiff might well have been so lessened as to greatly decrease the net income it derived therefrom. How then can it be said that even its net income from its brokerage business was not in part produced by the capital it employed in trading as a principal?

### Finding of Ultimate Fact.

Upon the primary facts found as hereinbefore set out, I find the ultimate fact to be that in each of the years involved in this suit capital was a material income-producing factor.

### Conclusion of Law.

■ The conclusion of law necessarily is that the plaintiff was not entitled to classification as a personal service corporation, and that the additional taxes assessed and collected by the defendant were lawfully assessed and collected by him.

A decree may be prepared in accordance with the foregoing and submitted for approval and entry.