## MEINRATH BROKERAGE CO. v. COMMISSIONER OF INTERNAL REVENUE.*

Circuit Court of Appeals, Eighth Circuit.
November 6, 1929.

No. 8588.

*Rehearing denied January 13, 1930.

Chester A. Gwinn, of Washington, D. C. (Humphreys & Gwinn, of Washington, D. C., on the brief), for appellant.

Barham R. Gary, Sp. Asst. to Atty. Gen. (J. Louis Monarch, Sp. Asst. to Atty. Gen., C. M. Charest, General Counsel, Bureau of Internal Revenue, and Robert L. Williams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for appellee.

Before VAN VALKENBURGH and GARDNER, Circuit Judges, and WOODROUGH, District Judge.

WOODROUGH, District Judge. This is an appeal from the orders of the United States Board of Tax Appeals finding deficiencies in income taxes against appellant for the years 1918 to 1921, inclusive, in the amount of $100,006.95. The appellant had filed its income tax returns for the years in question as a personal service corporation under section 200 of the Revenue Acts of 1918 and 1921 (40 Stat. 1058, 42 Stat. 227); but the Commissioner of Internal Revenue, upon audit of the corporation, refused to classify the appellant as such personal service corporation. The appellant petitioned the Board of Tax Appeals for redetermination of the proposed deficiency assessment. A hearing was had before the Board, and on consideration of the evidence it made its findings of fact, delivered its opinion, and made the orders here complained of.

The section of the statute defining personal service corporations is as follows: "The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits, or income derived from trading as a principal, or (2) of gains, profits, commissions or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive."

Pursuant to this section a corporation seeking to be classified as a personal service corporation must show: (1) That it is engaged in rendering personal service as distinguished from trading, merchandising, or manufacturing; (2) that the principal stockholders are regularly engaged in the active conduct of the business; (3) that capital, whether invested or borrowed, is not a material income-producing factor; and (4) that the income is to be ascribed primarily to the activities of the principal stockholders. The evidence and the findings of the Board establish that appellant's business is one of personal service, that the principal stockholders are regularly engaged in the active conduct of the business, and that its capital is not a material income-producing factor; but the classification was refused on the ground that the income was not to be ascribed primarily to the activities of the principal stockholders.

Appellant does not point out any facts found by the Board unsupported by the evidence before it, but rests on the contention that the facts found do not justify the conclusion of the Board that appellant's income was not to be ascribed primarily to the activities of the principal stockholders. Appellant's counsel argued at the bar that such a corporation as appellant, which renders only personal service and does not gain materially by use of capital, ought to be classified as a personal service corporation under section 200 whenever it appears that its principal stockholders give their time and energies to the business and there is no substantial stockholding by "absentee" owners.

The consideration of the extent to which stock in such a corporation is held by "absentee" or inactive owners is important in many cases, but the facts in this case presented a different question. It is conceded here that all the stockholders in this corporation devoted their entire time and energies to the business and contributed to an important extent in the production of the income, but the corporation also employed a large organization of nonstockholding employees contributing to the income. In such a situation the declaration of the Board in H. K. McCann Co., Inc. v. Com'r. of Internal Revenue, 14 B. T. A. 234, is applicable:

"We have no doubt that there is a point beyond which the services of employees may not be used without creating an organization which overshadows its supervisors in producing income, or so materially assists that income can no longer be said to be produced primarily by those who originate the business and supervise its execution.

"Whether that point has been reached must be decided in each case upon the facts in such case."

The findings made by the Board in

616

this case show that the corporation was engaged in the wholesale brokerage business and sold groceries to wholesale and retail chain store organizations on behalf of various manufacturers, producers, and canners, for which it received a broker's commission. It was one of the largest concerns of its kind in the United States, and its activities covered practically the entire country. Offices were maintained at Kansas City, Chicago, Joplin, Dallas, Wichita, Oklahoma City, Omaha, Minneapolis, St. Paul, and Des Moines. The general functions of each of the fourteen stockholders are set out in the findings and are shown to be important not only in the management and supervision of the business, but it appears that they alone secure offerings of merchandise from the principals who pay the commission, and some of them make sales. On the other hand, of the ten offices maintained by the corporation in the different cities during 1918, seven were in charge of nonstockholding managers; of the ten offices maintained during 1919, eight were in charge of nonstockholding managers; and of the thirteen offices maintained during 1920 and 1921, nine were in charge of nonstockholding managers. In 1918 it had 89 employees outside of its stockholders; in 1919, 113; in 1920, 136; and in 1921, 140. In 1918 it paid in salaries to its stockholders $145,655.19, and to its employees other than stockholders $174,199.79. In 1919 it paid in salaries to its stockholders $144,168.54 and to its employees $240,390.35. In 1920 it paid in salaries to its stockholders $101,098.46 and to its employees $318,369.56. In 1921 it paid in salaries to its stockholders $87,800 and to its employees $295,899.37.

There was no evidence before the Board to show exactly the service performed by each of the nonstockholding employees, but it was clear from the salaries and commissions paid them and the nature of the business done that their work was not confined to clerical or unskilled service but involved salesmanship and executive duties. The whole business was one complete organization in which the persons producing the income greatly outnumbered the principal stockholders and were paid annually much larger amounts than the salaries of the stockholders. Their work was as indispensible to the conduct of the business as was that of the principal stockholders.

The findings of the Board including the history of the development of the organization, and the Board's study of the working of the business, its tabulation of the sources of income, and details of comparisons made, present sufficient evidence for the conclusion it has drawn and the orders it has made. As the Board of Tax Appeals is given exclusive power to determine the facts upon which tax liability is based, there is no power in this court to weigh the evidence. Whether reasonable minds might have drawn a different conclusion from the facts found or not, we are satisfied that the final conclusions and orders of the Board are not without facts sufficient to support them. Denver Live Stock Commission Co. v. Commissioner (C. C. A.) 29 F.(2d) 543.

The orders appealed from are affirmed.

