## POTTS–TURNBULL ADVERTISING CO. v. UNITED STATES.

Court of Claims.
January 13, 1930.

No. F–285.

Arnold R. Baar, of Chicago, Ill. (Wilbur A. Giffen and KixMiller, Baar & Hoffman, all of Chicago, Ill., on the brief), for plaintiff.

Arthur J. Iles, of Indianapolis, Ind., and Herman J. Galloway, Asst. Atty. Gen. (George H. Foster, of Washington, D. C., on the brief), for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, GREEN, and GRAHAM, Judges.

BOOTH, Chief Justice. The plaintiff is a Missouri corporation, with its principal office at Kansas City. Since 1910 it has been engaged in the business of an advertising agency. In 1919 the plaintiff filed for the year 1918 its tax return upon the basis of a personal-service corporation. The Commissioner of Internal Revenue denied the plaintiff personal-service classification, reaudited plaintiff's return, and assessed a deficiency tax against the plaintiff of $7,718.63. Without paying the tax, the plaintiff appealed to the Board of Tax Appeals. The board, following a hearing, approved, on April 14, 1925, the determination of the commissioner. On March 22, 1926, the plaintiff, under written protest, paid the tax and filed a claim for refund, which on the 29th of May, 1926, was denied by the commissioner. This suit is for the recovery of the deficiency tax paid as above.

Section 200 of the Revenue Act of 1918, 40 Stat. 1058, provides as follows:

"That when used in this title— * * *

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal, or (2) of gains, profits, commissions, or other income, derived from a Government contract or contracts made between April 6, 1917, and November 11, 1918, both dates inclusive."

Section 900 (g) of the Revenue Act of 1924, 43 Stat. 337 (26 USCA § 1218 note), makes the findings of the Board of Tax Appeals prima facie evidence of the facts therein stated.

The issue here is one of fact. Both the plaintiff and defendant cite a multitude of cases, too many to review in detail; from them, however, it is apparent that the real contention is centered exclusively upon an ascertainment of facts. If the plaintiff's business activities and corporate organization come within the requirements of the revenue act, it may not be denied the classification for which it contends. This is conceded by both parties to be the established rule, and we need not fortify the statement by a long list of cases heretofore before the Board of Tax Appeals and the courts.

The applicable section of the revenue law imposes upon the plaintiff in this case the establishment of four indispensable facts, which we discuss in order. First, the income of the corporation "is to be ascribed primarily to the activities of the principal owners or stockholders." The Board of Tax Appeals found this fact to have been proven. The record herein corroborates the findings of the board in this respect. The list of stockholders set out in Finding III discloses the number and proportionate ownership of the capital stock of the corporation, and the board found that they were all regularly and actively, to the exclusion of all outside interests, engaged in the business. The defendant's challenge to the verity of this finding is rested solely upon what is said to be a situation which negatives the fact of the principal stockholders being actively engaged in the business. The present record discloses that certain stockholders active in the business of the corporation acquired their stock by purchase from H. K. Turnbull, president of the company, by an initial payment of a certain sum in cash, deferred payments to be met out of dividends earned by the company. It is further proven that when certain of these stockholders withdrew from the cor-

poration their stock was repurchased by Mr. Turnbull, he paying therefor all the payments theretofore made thereon, either in cash or by way of dividends; the certificates of stock having been retained by Turnbull until all payments for the same were duly made. The proof is conclusive that the certificates of stock were made out in the name of the purchaser, and the transfer of the same to him, duly authenticated in the books of the corporation. True, the former owner retained what he deemed adequate security for deferred payments on the stock; but the transaction proves a sale on credit. The certificates were merely evidence of ownership of stock, Pacific National Bank v. Eaton, 141 U. S. 227, 11 S. Ct. 984, 35 L. Ed. 702, and the failure to possess it by the purchaser, if the intention of the parties was to consummate a sale, does not convert the transaction into something other than a sale, Beardsley v. Beardsley, 138 U. S. 262, 11 S. Ct. 318, 34 L. Ed. 928. The stockholders involved in this transaction were concededly active in the business of the corporation, devoted their entire time to its affairs, and the nominal salaries they received clearly indexes that their primary concern was the production of dividends in which they had a monetary interest as stockholders, and which they received in proportion to their stock interests. We find nothing in the present record to impeach the findings of the board upon this issue.

Next, it is established beyond doubt that the principal stockholders were continuously active in the business. The defendant's contention in opposition to this fact is not sustained by the record. During eleven months of the year in issue the nonactive stockholders owned 18.2% of the outstanding capital stock of the corporation, and save for a single month did they own more. See Andrews-Bradshaw Co. v. United States, 65 Ct. Cl. 354. Treasury Regulations 45, art. 1529, is not in conflict with this holding. We quote it as follows:

"No definite percentage of stock or interest in the corporation which must be held by those engaged in the active conduct of its affairs in order that they may be deemed to be the principal owners or stockholders can be prescribed as a conclusive test, as other facts may affect the presumption so established. No corporation or its owners or its stockholders, however, shall make a return in the first instance on the basis of its being a personal-service corporation unless at least 80% of its stock is held by those regularly engaged in the active conduct of its affairs."

The paid-in capital of the corporation was assuredly nominal and not in any sense a material income-producing factor, unless the defendant's argument to the contrary is sustainable. The fundamental basis upon which the defendant contends for the use of capital as a material factor in producing income is predicated upon the system adopted in carrying on the plaintiff's enterprise. The plaintiff, it is said, paid the publications for advertising space engaged in behalf of its customers in advance of payments received therefor from its customers. In enumerated instances this is true, and manifestly exacted the use of funds. The answer to the contention is found in the case of Snitzler-Warner Co. v. Commissioner, decided by the Board of Tax Appeals May 2, 1929, 16 B. T. A. 342. The defendant admits that the plaintiff did not guarantee the accounts of its customers with the publishers, and the advance payments made by the plaintiff served only to secure a cash discount from the publishers, which was passed on to the customer by the plaintiff, and established the plaintiff as what is termed a "recognized agency." It is indeed difficult to perceive wherein the method produced income to any material extent. In the Snitzler-Warner Co. Case just cited the board said:

"The fact that a business has capital, or in certain contingencies might require capital, is not sufficient to deny personal service classification, if, in fact, capital is not a material income-producing factor. S. A. Conover Co., [Dec. 2302] 6 B. T. A. 679.

"The general practice of the petitioner was to pay bills to publishers after receiving payment from clients. However, in some cases, the petitioner did pay publishers amounts due from clients before the clients paid petitioner. The evidence discloses that throughout the year 1920 the average amount petitioner expended to pay publishers' bills, before receiving payments, either by notes or cash, from clients was $66,030.22 and that during the year 1921 this amount was $35,504.86. * * *

"Did the payment of publishers' bills by petitioner to the extent set forth above affect the volume of petitioner's business in such manner that it might be said that capital was a material income-producing factor? We believe not, when we consider that the gross income of the petitioner for the years 1920 and 1921 was $183,527.80 and $235,381.65, respectively, and that the gross billings for space for the years 1920 and 1921 amounted to $1,338,687.74 and $1,359,510.33, respectively. * * *

"We conclude that capital was not a material income-producing factor in petitioner's business during the years in question."

The board in its findings allocated out of the corporation's income certain sums to active stockholders upon the theory of individual responsibility for securing accounts which produced the sums. If one stockholder was attached to a particular advertiser, the paid-in commission received from him was ascribed to the activities of this stockholder. The present record, we think, discloses the error in the finding and overcomes its prima facie effect. The proof, clear and convincing, without contradiction from the defendant, establishes a business policy upon the part of the corporation which excludes the possibility of ascribing any definite portion of the annual income to any single stockholder. To secure the account of an advertiser involved individual effort and cooperation from all the interested parties. Customers were not enlisted when first introduced to a stockholder. On the contrary, as a preliminary it was first necessary to investigate the customer's business, ascertain his sales methods, obtain his publicity needs, and then convince him by a physical exhibit of the intended course to be pursued that the services of the agency would prove profitable. To do this required personal service of a high order, and until it was accomplished no income of significance came into the treasury. If the account of the advertiser was secured, the proof shows, not only individual, but combined effort was made to retain it and attain results for the customer. The president of the corporation was in command. He supervised all the accounts and, in cooperation with the other stockholders, was responsible for the income. The fact that one man may have been in charge of a single or several accounts does not entitle him to receive the full credit for the income derived therefrom, for the evidence conclusively shows that the co-operative policy of the corporation enlisted the combined services of the stockholders in meeting with the requirements of its customers. A signal illustration of what we mean is found in the case of Krebs, an active employee of the corporation. Krebs introduced Turnbull to a prospective advertiser, one whose account was especially desirable. Krebs had been in the employ of the prospective customer and stood well with him. The account was afterwards secured, not by reason of anything save the success of Turnbull in making a survey of the customer's advertising needs and convincing him of the possibilities of success. Krebs was not at the time proficient in the business and could not have possibly secured the customer or retained him, because of his admitted inexperience, yet the board ascribed the entire income of the corporation, amounting to $86,-155.09, to Krebs. The situation with respect to the other stockholders, aside from Turnbull, is not materially different than in the case of Krebs. True, the others were more experienced, but the income of the corporation was largely due to Turnbull, assisted as stated in the findings.

The findings of the board, with the exception above noted, entitled the plaintiff to classification as a personal-service corporation. They are complete, and we need not go further into detail. The statute was complied with.

Judgment will be awarded the plaintiff for $7,718.63, with interest.

WILLIAMS, LITTLETON, GREEN, and GRAHAM, Judges, concur.