CRIDER BROS. COMMISSION CO. v. COMMISSIONER OF INTERNAL REVENUE.

No. 8450.

Circuit Court of Appeals, Eighth Circuit.

Dec. 23, 1930.

Rehearing Denied Jan. 27, 1931.

J. Walter Farrar, O. C. Phillips, and Perry W. Shrader, all of Kansas City, Mo., for appellant.

G. A. Youngquist, Asst. Atty. Gen., Morton Poe Fisher and Barham R. Gary, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and Frank M. Thompson, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., for appellee.

Before STONE and VAN VALKEN-BURGH, Circuit Judges, and SCOTT, District Judge.

## VAN VALKENBURGH, Circuit Judge.

The only controlling issue presented in this appeal is whether the appellant was a personal service corporation for the years 1918, 1919, 1920, and 1921. The Board of Tax Appeals affirmed the ruling of the Commissioner, deciding, upon redetermination, that there were deficiencies of tax for 1918 of $6,069.57, for 1919, of $7,919.01, for 1920, of $418.21, and for 1921, of $3,953.43. Appellant sought and seeks to avoid these rulings and orders on the plea that it is a personal service corporation as defined in section 200 of the Revenue Act of 1918 (40 Stat. 1059), and therefore exempt from income and profit taxes, under the express provision of paragraph 14 of section 231 of the same act (40 Stat. 1077). The pertinent language of section 200 follows:

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor."

The Commissioner and Board of Tax Appeals found against appellant on both grounds. The stockholders and officers of this company, owning all its stock, for the year 1918, were C. G. Bridgeford, B. R. Bridgeford, and C. P. Crider; for 1919, 1920, and 1921, C. P. Crider, B. R. Bridgeford; S. G. Smith, and C. A. Horine. Their salaries aggregated for these years between $13,000 and $20,000 annually. In its opinion, the commission, reviewing the facts, said, as bearing upon the first requirement of the statute, that the corporation's income be ascribable primarily to the activities of the principal owners or stockholders:

"During the years involved in these proceedings the petitioner was engaged in the live stock commission business acting as agent for shippers and purchasers of live stock. It did not in any case purchase or sell live stock on its own account nor did it have any interest in the live stock.

"Its business was that of dealing for others on a commission basis receiving as compensation for its services a certain amount per head or per car of stock handled by it. Its compensation was not even dependent on the amount or consideration for which the stock sold.

"All of the stockholders were regularly engaged in the active conduct of the business. With the exception of Horine they consulted with customers as to the condition of the stock, the time for purchasing stock to feed, the time to sell and as to market conditions generally. They sorted or assisted in sorting the stock. They managed the affairs of the office, directed and supervised the activities of the salesmen, buyers, yardmen, and office employees. * * *

"In 1918, the petitioner employed eleven salesmen, buyers, and yardmen while it employed thirteen in 1919, fourteen in 1920 and twelve in 1921. Practically all the salesmen and buyers were members of the live stock exchange. As such members they were regulated in their conduct according to the rules of the exchange and were held personally re-

sponsible to the exchange for every violation of the rules prescribed. While their services were under the direction and subject to the supervision of one of the stockholders, in some instances buyers would go out in the country and buy cattle for customers. They were high salaried men. The services which they performed were a substantial and material part of the services rendered by the corporation. While as a rule these persons acted under the direction of a stockholder in making sales or purchases, other important services were rendered independently. They went out to inspect cattle, sorted it out and determined if and when it was ready for sale. They located cattle to be bought or sold and some times bought on orders from customers. They came in direct contact with the people with whom they did business. They were the persons who did the bargaining in the purchases and sales."

The compensation paid to employees in 1918 was $37,000; approximately the same in 1919; in 1920, in excess of $36,000; and in excess of $34,000 in 1921. The opinion of the commission upon this clause of the statute concludes as follows:

"In the conduct of its business, the petitioner relied, to a substantial extent, on the services of non-stockholders. We think that what we said in Patterson-Andress Co., Inc., 6 B. T. A. 392, is applicable here. There we said:

"In our opinion this clause means more than that the stockholders shall obtain the clients and supervise the work, or that clients shall look to their experience; it means, among other things, that the corporation may not rely upon non-stockholders to do a substantial amount of the work which produces the income whether such work be detailed or supervisory. Just as another clause excludes from personal service classification those corporations where capital contributes materially to the income, so does this clause exclude corporations where the services of employees so contribute.

"We cannot find that the services of the non-stockholding employees taken as a whole was not a material income producing factor or that in view of the services of such employees the income was to be ascribed primarily to the activities of the principal stockholders."

This conclusion is amply warranted by the facts found, and we deem it unnecessary to add to the reasoning employed in support of that conclusion. The Board of Tax Appeals next takes up the question of whether capital was a material income-producing factor in the business of appellant. Incidentally it is to be observed that a "corporation, claiming benefit of exception to general method and extent of taxation, has burden of showing that it clearly comes within terms of such exception." Hubbard-Ragsdale Co. v. Dean, Internal Revenue Collector (D. C.) 15 F.(2d) 410, affirmed (C. C. A.) 15 F.(2d) 1013; Feeders' Supply Co. v. Commissioner of Internal Revenue (C. C. A. 8) 31 F.(2d) 274; Franciscus Realty Co. v. Commissioner of Internal Revenue (C. C. A. 8) 39 F.(2d) 583.

It is unnecessary to fix the precise amount or proportion in which capital contributes to income, nor "to fix definite bounds and limits to the word 'material' as employed in Section 200." It is sufficient if, upon all considerations, capital is a substantial income-producing factor. Metropolitan Business College v. Blair, Commissioner (C. C. A. 7) 24 F.(2d) 176. It is shown that during the years involved appellant made loans to its old line customers, taking notes therefor. As found by the Board of Tax Appeals, "part of the notes thus acquired and secured by mortgages were endorsed by the petitioner and discounted at the banks, which allowed the petitioner from one percent to two percent for inspecting the loan and drawing papers. Others were discounted by individuals and the remainder was held by the petitioner at the end of each year." From this source appellant received gross interest income for the year 1918 of $11,611.54; for 1919, $10,054.51; for 1920, $9,572.41; and for 1921, $7,127.05—sums aggregating an average of 9.40 per cent. of its total gross income for these years. Against these items of income appellant desires to set off losses from bad debts, for the years 1918 and 1921, and insists that the term "income," as employed in the statute, is restricted to net income. This contention was rejected by this court in Denver Live Stock Commission Co. v. Commissioner of Internal Revenue, 29 F. (2d) 543, 545. We said:

"We cannot indulge the contention of counsel that the term 'income,' as employed in the statute, is restricted to net income; that whether, in any given year, a corporation is to be classified as a personal service corporation, depends upon whether its capital in that particular year resulted in the production of net income, and that such a corporation may be classified as general in one year and as a personal service corporation in another year, dependent upon the financial result of its operations."

In Hatch et al. v. United States, 34 F. (2d) 436, we held that a live stock commission agency whose annual gross income from interest or loans amounted to as much as $7,000 was not exempt from tax as a personal service corporation.

In the course of its opinion in the instant case the Board of Tax Appeals said:

"Even, however, if the interest itself received from the loans be held not to be a material part of the income of the petitioner, we cannot say to what extent the making of the loans actually contributed to receiving the business or a material part of it. If these loans, through the good will created thereby or otherwise, held customers or added new ones, the money used was an income producing factor aside from the mere interest received therefrom. It was doubtless necessary or advisable as the result of competition or otherwise to make these loans. In making them a very substantial amount of capital was used. Whether it was invested or borrowed is immaterial."

This accords with the views of this court as expressed in Denver Live Stock Commission Co. v. Commissioner of Internal Revenue, supra, loc. cit. 544 of 29 F.(2d). Not only is the income derived from the loans a substantial one, but the practice of making loans to customers engaged in the feeding and development of stock for market is a very important factor in getting and holding business and in increasing the commissions earned by the corporation. The Board of Tax Appeals held, in view of all the evidence, that appellant "does not meet the tests prescribed by the statute to entitle it to personal service classification." In this we concur. Compare St. Paul Abstract Co. v. Commissioner (C. C. A. 8) 32 F.(2d) 225, and Meinrath Brokerage Co. v. Commissioner (C. C. A. 8) 35 F.(2d) 614.

The orders appealed from are affirmed.

SCOTT, District Judge, concurs in the result.