**EDWARD P. ALLISON CO., Inc., v. COMMIS-SIONER OF INTERNAL REVENUE.**
No. 9450.

Circuit Court of Appeals, Eighth Circuit.
Feb. 16, 1933.

Rehearing Denied March 22, 1933.

· J. Sydney Salkey, of St. Louis, Mo. (William R. Gilbert, of St. Louis, Mo., on the brief), for petitioner.

Erwin N. Griswold, Sp. Asst. to Atty. Gen. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key and Hayner N. Larson, Sp. Assts. to Atty. Gen., and C. M. Charest, Gen. Counsel, Bureau of Internal Revenue, and J. Arthur Adams, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., on the brief), for respondent.

Before KENYON, GARDNER, and SANBORN, Circuit Judges.

KENYON, Circuit Judge.

Petitioner, formerly the William A. Corrao Electric Company, of St. Louis, Mo., engaged in the general electrical contracting business, appeals from a decision of the United States Board of Tax Appeals refusing petitioner classification as a personal service corporation for the years 1920 and 1921, and denying petitioner the privilege of having its excess profits taxed for these years as if it were a partial personal service corporation.

The sections here to be considered are sections 200 and 303, 40 Stat. 1058, 1089, and are in part as follows:

"Sec. 200. That when used in this title—

* * *

"The term 'personal service corporation' means a corporation whose income is to be ascribed primarily to the activities of the principal owners or stockholders who are themselves regularly engaged in the active conduct of the affairs of the corporation and in which capital (whether invested or borrowed) is not a material income-producing factor; but does not include any foreign corporation, nor any corporation 50 per centum or more of whose gross income consists either (1) of gains, profits or income derived from trading as a principal. * * * *"

"Sec. 303. That if part of the net income of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total net income) is derived from a separate trade or

business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of 'personal service corporations,' then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such net income shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part."

The object of these sections is to exempt from income and excess profits taxes, in part, those corporations whose income is not materially derived from capital, but is the result of personal service on the part of the stockholders, making a personal service corporation for purposes of taxation under the federal statutes somewhat akin to a partnership. New Orleans Shipwright Co., Ltd., v. Commissioner of Internal Revenue (C. C. A. 5) 27 F.(2d) 214.

The Board of Tax Appeals made findings of fact. We set forth some of them:

"The petitioner is a corporation organized in 1902 under the laws of Missouri. It is located and has its principal place of business in St. Louis. During the years involved the petitioner's capital stock was owned and held as follows: E. P. Allison, 32.73 per cent., Mrs. M. D. Allison, 27.27 per cent., C. F. Crowley, 40 per cent. M. D. Allison was the wife of E. P. Allison. She rendered no service to or for the petitioner, whose business was managed and carried on by Crowley and E. P. Allison.

"Prior to 1919 the petitioner's sole business was that of general electrical construction, as an independent contractor. During 1920 and 1921 it continued that line of business, and in addition it also rendered services in supervising electrical construction work which was done either by the owner or by a general contractor. * * *

"The work of securing the supervision agreements was done by E. P. Allison, five of such agreements being thus secured in 1919 and three in 1920. Allison devoted less than 15 per cent. of his time, in 1920, to work required by these agreements; in 1921 about 5 per cent. of his time was so employed. Crowley devoted 95 per cent. of his time in 1920 to the work under the supervision contracts, and his salary for that year was paid by the persons for whom the supervisory work was performed. In 1921 the work of supervision was nearly completed and Crowley devoted to it only about 15 per cent. of his time and received his salary from the petitioner. The time of both Allison and Crowley, when not devoted to the supervisory work, was devoted to petitioner's business of electrical construction. * * *

"The petitioner's gross income for the year 1920 amounted to $461,317.01. Of this total $428,233.13 was derived from electrical construction business, $32,644.95 from commissions for supervisory work, and $438.93 from interest. Its expenses for the year amounted to $427,811.93, the principal items of which were: Cost of materials used, $186,972.35; labor, $172,081.67; St. Louis office, $9,512.75; Chicago office, $16,127.16; salaries of officers, $10,300. Net taxable income for the year, less $214.62 derived from interest exempt from income tax, amounted to $36,457.49, of which approximately 89 per cent. was derived from the purely supervisory work.

"For the year 1921 the gross income amounted to $332,268.95, of which $301,336.96 was derived from electrical construction business, $30,055.67 from commissions for supervisory work, and $876.32 from interest. Expenses for the year amounted to $295,470.76, the principal items being: Cost of materials used, $107,577.57; labor, $96,616.41; salaries of officers, $18,666.66. Net taxable income for the year, less $215.22 derived from interest exempt from income tax amounted to $37,641.76, of which approximately 79 per cent. was derived from the purely supervisory work. In each year the items 'cost of materials used' and 'labor,' represent expenses incurred in connection with petitioner's electrical construction business, and had no relation to petitioner's supervisory work. The other items represent general expenses, not directly resulting from nor allocable to either branch of petitioner's work."

The capital stock of petitioner for a part of the year 1920 was of the par value of $11,000. After April, 1920, it was $22,000.

In the electrical contracting branch of the corporation, some of the business was obtained through successful bidding in open market. In some instances it was taken on a cost plus contract. Under either method, petitioner furnished the necessary appliances, supplied the labor, and did or caused to be done everything necessary to install the electrical appliances according to the terms of the contract. The profit was the difference between the contract price and the cost of installation. In the work of supervision, peti-

tioner operated under the terms of eight written agreements under which petitioner had taken charge of the work and contracted in its own name for materials, labor, and other expense items. An office was maintained both in St. Louis and in Chicago, primarily for the purpose of its electrical construction business. The organizations of these offices rendered services also in respect to the work under supervision agreements. The Board found that petitioner's gross income from its contracting business was several times as great as that from all other sources.

■■ The primary findings of fact of the Board will be accepted by this court as correct if there is substantial evidence to support them. We do not weigh the evidence. The conclusion from such findings on the ultimate question to be decided as to whether petitioner under the statutes is a personal service corporation or partially such is a question of law. Denver Live Stock Comm. Co. v. Com'r of Internal Revenue (C. C. A. 8) 29 F.(2d) 543; Conklin-Zonne-Loomis Co. v. Commissioner of Internal Revenue (C. C. A. 8) 29 F. (2d) 698; Feeders' Supply Co. v. Commissioner of Internal Revenue (C. C. A. 8) 31 F.(2d) 274; St. Paul Abstract Co. v. Commissioner of Internal Revenue (C. C. A. 8) 32 F.(2d) 225; Meinrath Brokerage Co. v. Commissioner of Internal Revenue (C. C. A. 8) 35 F.(2d) 614; Franciscus Realty Co. v. Commissioner of Internal Revenue (C. C. A. 8) 39 F.(2d) 583; Williams v. Commissioner of Internal Revenue (C. C. A. 8) 44 F.(2d) 467.

■ The burden of proof to show it is a personal service corporation under section 200, supra, or that it comes under section 303, supra, is upon petitioner. St. Paul Abstract Co. v. Commissioner of Internal Revenue (C. C. A. 8) 32 F.(2d) 225; Franciscus Realty Co. v. Commissioner of Internal Revenue (C. C. A. 8) 39 F.(2d) 583; McManus-Heryer Brokerage Co. v. Crooks (D. C., W. D. Mo., W. D.) 41 F.(2d) 280, 287; Crider Bros. Commission Co. v. Commissioner of Internal Revenue (C. C. A. 8) 45 F.(2d) 974; John M. Parker Co. v. Commissioner of Internal Revenue (C. C. A. 5) 49 F.(2d) 254.

These sections of the statutes with reference to personal service corporations have been productive of much litigation. The Treasury Department promulgated under the Revenue Act of 1918 certain regulations (No. 45) to govern in the classification of corporations as personal service corporations or otherwise. We refer to them briefly, not as binding on courts, but helpful as illustrative of the view taken by the Treasury Department in its attempt to conform to the statutes. Briefly, they provide in general that, in order that a corporation may be deemed to be a personal service corporation, its earnings must be derived principally from compensation for personal services rendered by the corporation to the persons with whom it does business; that, where a corporation is engaged in two or more professions or businesses which are related and where one of them does not render personal service, the corporation is not a personal service corporation unless the nonpersonal service element is negligible or merely incidental and no appreciable part of its earnings are to be ascribed to such sources; that a corporation cannot be classified as a personal service corporation where the principal owners or stockholders do not render the principal part of the services, but merely supervise or control affairs of employees; that no definite percentage of stock or interest in the corporation determines just who are the principal owners or stockholders, as a conclusive test. Article 1529 provides: "No corporation or its owners or stockholders shall, however, make a return in the first instance on the basis of its being a personal service corporation unless at least 80 per cent. of its stock is held by those regularly engaged in the active conduct of its affairs."

Article 1532 of said regulations provides that the term "capital" as used in section 200, supra, of the statute, means not only capital actually invested by the owners or stockholders, but also capital secured in other ways. These regulations and decisions of the courts are in practical harmony.

We consider, first, the alleged right of petitioner to claim classification as a personal service corporation under section 200, supra. To so do, it must comply with all of the following requirements:

(1) It must be engaged in rendering personal service, as distinguished from trading, merchandising, or manufacturing.

(2) Its income must be ascribed primarily to the activities of its principal owners or stockholders.

(3) The principal owners or stockholders must themselves be regularly engaged in the active conduct of its affairs.

(4) Capital must not be a material income-producing factor in the business as a whole.

(5) Fifty per cent. or more of its gross income must not have been derived from trading as a principal.

(6) Fifty per cent. or more of its gross income must not have been derived from wartime contracts with the government. Meinrath Brokerage Co. v. Commissioner of Internal Revenue, supra.

If any one of these requirements is lacking, the classification as a personal service corporation must be denied.

We shall discuss at this point only one of the necessary elements, and that is with respect to whether or not capital is a material income-producing factor in petitioner's business as a whole. The Board of Tax Appeals found that it was. The use of some capital is necessary in nearly any corporation, and may be merely incidental to the conduct of a trade or business, or it may be a material and important factor in producing the income of the corporation. If the latter, the corporation is excluded from classification as a personal service corporation under said section 200. It is the proportion of gross income produced by capital, not net income, that determines whether capital is an income-producing factor. Denver Live Stock Commission Co. v. Commissioner of Internal Revenue, supra; McManus-Heryer Brokerage Co. v. Crooks, supra; Crider Bros. Commission Co. v. Commissioner of Internal Revenue, supra.

The Board found petitioner's gross income for the year 1920 derived from the business of independent contracting to be $428,233.13, and for 1921 $301,336.96, while from commissions for supervisory work it received in 1920 $32,644.95, and in 1921 $30,055.67.

Petitioner contends that the Board confused gross income with gross receipts, and argues that the gross receipts less proper deductions produced the gross income attributable to capital, which it claims to be 10.96 per cent. for 1920, and 20.08 per cent. for 1921 of petitioner's gross income for those years, and that such percentages are not enough to establish that capital was a material income-producing factor in the business as a whole. There may be something in the point made by petitioner as to a difference in gross receipts and gross income, but it is not necessary for us to determine the exact meaning of gross income in a construction business as compared with its generally accepted meaning in a merchandising business. Whether petitioner is right or not in its theory that materials and labor should be deducted from gross receipts in arriving at gross income, it is clear that many of the items deducted by petitioner in arriving at the claimed percentages, such as travel, printing and stationery, telephone and telegraph, advertising, insurance, office supplies and other items, totaling in all many thousands of dollars, were not the "ordinary and necessary expenses," Botany Worsted Mills v. United States, 278 U. S. 282, 49 S. Ct. 129, 130, 73 L. Ed. 379, deductible from gross receipts to arrive at the gross income, but should be deducted from gross income to arrive at net income. Petitioner was in error in deducting all the claimed "ordinary and necessary expenses" of its business in arriving at its percentages, and therefore the percentages of its total gross income for the years in question attributable to capital were very much in excess of 10.96 per cent. for 1920 and 20.08 per cent. for 1921.

We refer here to the contention of petitioner that the implication of section 200 is that, wherever less than 50 per cent. of the gross income of a corporation is derived from trading as a principal, the corporation must be classified as one in which capital is not a material income-producing factor. This contention is not sound. We agree with the conclusion of the Circuit Court of Appeals of the Seventh Circuit in Jenkins-Kreer & Co., Inc., v. Commissioner of Internal Revenue, 50 F.(2d) 53, page 55, where it says: "We interpret this section to mean that where 50 per centum or more of the gross income consists of gains, profits, or gross income derived from trading as a principal, etc., it is to be conclusively presumed that the corporation is one whose capital is a material income-producing factor. On the other hand, if a less amount than 50 per centum of the gross income consists of the items named, the presumption does not arise; but, in such case, whether capital is a material gross income-producing factor depends upon the facts involved. The limitation of 50 per centum is not the basis for determining whether capital is a material income-producing factor, but rather it is a point of limitation at and beyond which the proof of the ultimate fact becomes conclusive. Below this point it still remains a matter of proof."

In Conklin-Zonne-Loomis Co. v. Commissioner of Internal Revenue, supra, the determinative question was whether capital was a material income-producing factor. Figured in percentages, the proportions of the total gross income in that case attributable to capital for the years in question were 11.5 per cent., 10.4 per cent., and 6.7 per cent., respectively. This court sustained the Board of Tax Appeals in holding that the income from investments was nevertheless of sufficient

materiality to preclude the petitioner's classification as a personal service corporation.

In Denver Live Stock Commission Co. v. Commissioner of Internal Revenue, supra, where the income of the corporation from capital sources was approximately one-fifth of its total income, and where, when deductions were properly made against the gross income, the business showed a net loss, this court held this did not alter the principle that the capital invested was income producing and formed one factor of its business.

In Crider Bros. Commission Co. v. Commissioner of Internal Revenue, supra, this court said, at page 976 of 45 F.(2d): "It is unnecessary to fix the precise amount or proportion in which capital contributes to income, nor 'to fix definite bounds and limits to the word "material" as employed in Section 200.' It is sufficient if, upon all considerations, capital is a substantial income-producing factor."

In McManus-Heryer Brokerage Co. v. Crooks, Collector of Internal Revenue, supra, where it was found that the gross income from the branch of the plaintiff's business in which it traded as a principal and used capital amounted for the years in question to 12½, 29, 13½, and 15 per cent., respectively, of the plaintiff's total gross income for those years, it was held that capital was a material income-producing factor, precluding classification under section 200, and that this result was not changed by the fact that the "branch of its business in which capital was employed was conducted by it only as an incident to its primary business of brokerage."

In Atlanta-Southern Dental College v. Commissioner of Internal Revenue (C. C. A. 5) 50 F.(2d) 34, it was held that a dental college, with sixteen stockholding and seventeen nonstockholding professors, having an interest in school building and equipment which exceeded $100,000, was not a personal service corporation. The court gave emphasis to the large amount of capital invested which the Board of Tax Appeals had ignored.

In Appeal of Seaboard Mills, Inc., 5 B. T. A. 575, it was held that 16 per cent. of the gross income of the corporation being attributable to capital sources precluded classification as a personal service corporation.

The two cases especially urged by petitioner as sustaining its claim of personal service classification are Atlantic Coast Distributors v. Commissioner of Internal Revenue (C. C. A. 4) 33 F.(2d) 733, and North American Ry. Const. Co. v. Commissioner of Internal Revenue (C. C. A. 7) 27 F.(2d) 493, 59 A. L. R. 1274. In the first of these trading as a principal accounted for 20.3 per cent. of the total gross income of the petitioner corporation for the year in question, and the court nevertheless held that capital was not a material income-producing factor within the meaning of section 200. This is perhaps the strongest case for petitioner that can be found. In the other case, 27 F.(2d) 493, the figures and percentages as to gross income are not given, so that it is a little difficult to figure just the basis of the court's finding. It held petitioner entitled to a personal service classification. The court, however, said, page 495 of 27 F.(2d): "Petitioner's net income for the year, from all sources, was $140,814.57, of which $116,455.86 was for the 'cost plus' work, $20,366.57 for straight contract work, $120 from rents, and $3,872.14 from investments. While there would be no difficulty in concluding that the $3,992 of income derived from investments and rent should not be considered as 'material' in comparison with the total net income of $140,814.57, we are not prepared to say that, if the $20,366 of profits on the straight price work were added, the $24,358 total could be likewise regarded as not 'materially' contributing to the net income for the year."

■■ It is apparent that no definite percentage ratio of gross income derived from capital sources to total gross income can be fixed as the exact point at which capital becomes a material income-producing factor. The contribution of capital to income is a matter largely of approximation. The way in which capital makes its contribution is important. If utilized in the form of salaries, wages, office rent, etc., it does not make it a material income-producing factor, even though such expenditures are usually essential to the production of income. Iredell v. De Laski & Thropp Circular Woven Tire Co. (C. C. A. 3) 290 F. 955; Fuller & Smith v. Routzahn (D. C., N. D. Ohio, E. D.) 23 F. (2d) 959; Dreyer Commission Co. v. Hellmich (C. C. A. 8) 25 F.(2d) 408; Mountain View Sanitarium Co. v. Huntley (D. C. Or.) 25 F.(2d) 1016.

When the use of capital goes further and gives character to a sizable portion of the operations of the corporation, the percentage of gross income directly attributable to capital sources required to render capital a material income-producing factor need not be very great.

█ It is a fair deduction from the testimony of petitioner's president, Allison, that the supervisory work was undertaken merely as a means of paying the overhead and to tide over a slack season. There is no doubt that in the year 1920 according to petitioner's own figures capital was employed to finance construction on straight contract work in approximately the sum of $400,000, and in 1921 to the extent of almost $300,000. This employment was not seasonal, but constant. It was not incidental to, but in line with, the major purposes of the corporation, which had been prior to 1919 engaged exclusively in straight contract work. We have no question that, even if the percentages of gross income from capital sources be figured as petitioner has figured them, which is clearly erroneous, capital was nevertheless a material income-producing factor within the meaning of section 200, and hence petitioner was not entitled to classification thereunder as a personal service corporation.

Did the Board of Tax Appeals err in holding that petitioner had not met the requirements of section 303 and was not entitled to have its excess profits tax computed thereunder?

It is unquestioned that petitioner during the years involved carried on the business of an independent contractor and also the work of supervising electrical construction; the latter not requiring any substantial use of capital. For such supervisory work petitioner received in 1920 $32,644.95, and its total taxable net income for that year was $36,457.49. In 1921 it received for the supervisory work $30,055.67, while its total taxable net income amounted to $37,641.76. Therefore the supervisory work contributed some 89 per cent. of the income for one of the years and 79 per cent. for the other. This work apparently constituted a separate branch of petitioner's trade or business from which more than 30 per cent. of the total net income of the business was derived.

█ It is obvious that in providing for partial personal service classification section 303 adopts the requirements of section 200 that the income of the corporation be ascribed to the activities of the principal owners or stockholders, and that the latter be regularly engaged in the active conduct of the affairs of the corporation. We are unable to agree with the conclusion of the Board of Tax Appeals that the principal stockholders must be regularly engaged in the active work of carrying out the contracts for supervision only. We think the income that must be ascribed primarily to the activities of the principal owners or stockholders is the income from the branch of the business for which personal service rating is sought. By the very terms of the section 70 per cent. of the net income of the business as a whole may be ascribed primarily to capital, and the devotion of some time by the principal owners or stockholders to the capital-employing branch of the business would not necessarily be fatal to the application of section 303. If it were, this section would be without any application whatever. It is sufficient if the principal owners or stockholders be "regularly engaged" in the business as a whole, and their devotion to the personal service branch not be negligible. While under section 303 the principal owners or stockholders must be regularly engaged in the business as a whole, the income from the personal service branch of the business must be "ascribable primarily" to their activities in the active conduct of the affairs of the corporation.

█ It is an undisputed fact that Mrs. Allison, holding 27.27 per cent. of the stock of the petitioner corporation, was not active at all in the business. She was not "regularly engaged in the active conduct of the affairs of the corporation," nor was the income of any branch thereof in any way "ascribable primarily" to her activities. So that this branch of the case gets down to the question of whether Mrs. Allison was one of the principal owners or stockholders. If she was, petitioner could not be classified either under section 303 or section 200. It would be difficult to define just what a principal stockholder in a corporation is, though not difficult to form an opinion on that subject from the facts. The reason an income must be ascribed primarily to the activities of the principal owners or stockholders is so well expressed by the late Judge Cant in Matteson Co. v. Willcuts (D. C., D. Minn. 3 D.) 12 F.(2d) 447, 449, that we quote from the same: "It is necessary, not only that the income of the corporation shall be derived from personal service, but also that it shall be derived primarily from the activities of those who principally are to share in that income, and therefore in the benefits of the law. If this were not so, the personal service in such cases might be rendered by one or two, or a few only, and others largely interested in the corporation, but rendering no service, might be capitalizing the efforts of these few and realizing a profit therefrom. To approximate the situation where similar service is rendered by copartnerships, it is necessary that those who, principally, are to have the

benefit of the law, must be engaged in a substantial way in rendering the personal service which the corporation claims to provide. Any substantial departure from this rule would be extending the law in such manner as to create a favored class, and would be wholly without justification. It is not necessary under the law that each stockholder shall be engaged in rendering the personal service, but the letter and the spirit of the law both require that the great body of the stock shall be in the hands of those who are rendering this service."

The theory of the law is that one holding a substantial block of the stock shall be active in rendering personal service in order for that service to be made the basis of special advantages to such stockholder through the corporation. Nonactive interests are not favored.

Petitioner argues that, "The phrase 'principal stockholders' to be given a normal construction must be held to mean those stockholders holding the larger interest as distinguished from those having a lesser interest." We do not think this argument is sound. Suppose a corporation has three stockholders, each owning 33⅓ per cent. of the stock, which ones could be called the principal stockholders? Very clearly all the stockholders would be regarded as principal stockholders. If a corporation had four stockholders, two owning 26 per cent. each of the stock, and two 24 per cent. each, under petitioner's theory the two owning the 26 per cent. would be the principal stockholders. What would the others be? The statute does not say *majority* stockholders, but *principal* stockholders. Mrs. Allison here had 27.27 per cent., which was .6 per cent. less than one-third of the total. It was only 5 per cent. less than Allison's interest. If she had combined with either Allison or Crowley in voting, they could have controlled the corporation. Just where is the line to be drawn between Allison's 32.73 per cent. and Mrs. Allison's 27.27 per cent.? If there were a number of small stockholders instead of a large block of stock being held by one person, as is the case here, it is probable that Allison and Crowley would constitute all the principal stockholders, notwithstanding article 1429 of Regulation 45, to which we have heretofore referred, under the Revenue Act of 1918, which prescribes that 80 per cent. of the stock of a corporation must be held by those regularly engaged in the active conduct of its affairs to warrant classification as a personal service corporation.

We refer to some of the cases where the question has arisen as to the amount of interest sufficient to constitute one a "principal stockholder." First the cases relied on by petitioner:

In Mac Martin Advertising Agency, Inc., v. Commissioner, 11 B. T. A. 162, Mary W. Martin owned slightly more than 20 per cent. of the stock of the corporation. She was not actively engaged in the business of the corporation. It was held she was not a principal stockholder under the statute.

In Harry S. Kaufman v. Commissioner of Internal Revenue (C. C. A. 5) 24 F. (2d) 44, 46, the Board of Tax Appeals found the stockholder, Mayer, not regularly engaged in his company's business within the meaning of section 200. The court held that this finding was not supported by the evidence, that Mayer should be included among the active stockholders, and that, when so included, it appeared that stockholders owning more than 80 per cent. of the capital stock were "regularly and actively engaged in the conduct of petitioner's business," and "in our opinion, the percentage of stock so represented was large enough to constitute the owners thereof the principal stockholders." It appears, therefore, the court held that Mayer was regularly engaged in the company's business, and his stockholdings should be considered which brought the holdings of active stockholders above 80 per cent. There is no help to petitioner's cause in this case.

In Federal Advertising Agency, Inc., v. Commissioner of Internal Revenue, 19 B. T. A. 1126, one of the stockholders of petitioner, Mrs. Kaufman, owned 23 per cent. of the stock for a portion of the time, and 18.7 for the balance. The owners of the remainders of the stock were actively engaged in petitioner's affairs, and it was held that these percentages of Mrs. Kaufman were not sufficient to defeat the personal service classification. The Board in this case stated, at page 1135 of 19 B. T. A.: "We think it proper in this connection to bear in mind that Mrs. Kaufman was at least to some extent active in petitioner's affairs. She not only discussed with her husband his problems and those of other stockholders, but went out of her home and into the markets to secure information and advertising ideas which were of value to the petitioner."

In Andrews-Bradshaw Co. v. United States, 65 Ct. Cl. 354, one stockholder, a lawyer, holding 22.4 per cent. of the stock, did not devote his entire time to the business. Another stockholder holding the same amount

of stock was engaged in the air service in France during the war and was not active. The court laid considerable stress on the fact that one of the stockholders was precluded from personal activities by service in the army abroad during the war and indulged the presumption that he should be considered an active member of the corporation, and that the combined holdings of three stockholders, including the soldier, totaled 77.6 per cent., and permitted the company to be classified as a personal service corporation; the three stockholders being the principal stockholders.

Some other cases should be referred to:

In Potts-Trumbull Advertising Co. v. United States (Ct. Cl.) 37 F.(2d) 970, where the extent of the nonactive interest was 18.2 per cent., it was held not sufficient to prevent classification as a personal service corporation.

In Robischon & Peckham Co. v. Commissioner of Internal Revenue, 11 B. T. A. 483, it was held that a stockholder owning 20.8 per cent. of the stock was a principal stockholder.

In Chappelow Advertising Co. v. Commissioner of Internal Revenue, 13 B. T. A. 1090, it was held that a stockholder owning 35 per cent. of the stock was a principal stockholder, and, not being regularly engaged in the active conduct of the business, petitioner was not entitled to personal service classification for that year.

In Lee Live Stock Commission Co. v. Commissioner of Internal Revenue, 7 B. T. A. 532, 27 per cent. ownership of stock was held sufficient to constitute one a principal stockholder.

In J. T. Crane v. Commissioner of Internal Revenue, 19 B. T. A. 881, the total shares of the principal stockholders totaled 86 per cent. and the corporation was held entitled to personal service status.

In Biscayne Engineering Co. v. Commissioner of Internal Revenue, 15 B. T. A. 90, the Board indicated that a 12 per cent. ownership of stock in one year and 21 per cent. in another would constitute the holder a principal stockholder.

The only cases apparently holding a nonactive interest in excess of 20 per cent. stock ownership did not prevent classification under section 200 or section 303 are Federal Advertising Agency v. Commissioner of Internal Revenue, supra, and Mac Martin Advertising Agency v. Commissioner of Internal Revenue, supra.

To hold that Mrs. Allison's undivided interest of 27.27 per cent. did not constitute her a principal stockholder under the statutes, we would have to go further than any case we have been able to find. Of course the 80 per cent. line established by the administration regulations is not binding but prima facie only, and other circumstances "may affect any presumption so established." There is no circumstance here that would justify departing from this prima facie requirement. We think Mrs. Allison's interest constituted her a principal stockholder, and, being nonactive as regards the entire business of the corporation, it was sufficient to preclude either classification as a personal service corporation under section 200, or partial personal service corporation under section 303. It is to be noted also that Allison devoted very little time to this branch of the business of the corporation in 1920 and in 1921. Both the services of Allison and Crowley in 1921 as to the supervisory business of the corporation were close to "negligible," and this fact added to the large nonactive interest of Mrs. Allison enlarges the basis for denying the classification claimed. In the opinion of the Board of Tax Appeals, "Both Allison and his wife were principal stockholders. Robischon & Peckham Co. v. Commissioner, supra. Together they owned 60 per cent. of petitioner's capital stock. As neither of them was regularly engaged in the supervisory work carried on by the petitioner, the requirements of section 303 of the Revenue Act of 1918 have not been met."

It is suggested by respondent that the income of the corporation was not ascribed primarily to the activities of the principal stockholders, that the taxpayer relied upon nonstockholders to do a substantial amount of the work which produced the income, and hence petitioner is not within section 200, supra. There may be merit in this point under the decisions of this court in Crider Brothers Commission Co. v. Commissioner of Internal Revenue, supra, and Mcinrath Brokerage Co. v. Commissioner of Internal Revenue, supra, but, in view of our conclusion on the other questions raised, it will be unnecessary to go into that.

The conclusion of the Board of Tax Appeals that petitioner was not entitled to classification under section 200 as a personal service corporation and that it failed to meet the requirements of section 303 of the Revenue Act of 1918 was correct.

Its judgment is affirmed.